**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERIC MURDOCK,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-2138** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **GENE BROWN, et al.,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Presently before the Court is Defendants' motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 44.) Defendants' motion has been briefed by the parties and is ripe for the Court's disposition. For the reasons that are set forth below, the Court will grant in part and deny in part Defendants' motion for summary judgment.

**I.    BACKGROUND**

On November 17, 2020, <u>pro se</u> Plaintiff Eric Murdock ("Plaintiff"), who is currently incarcerated at State Correctional Institution Benner Township in Bellefonte, Pennsylvania ("SCI Benner Township"), commenced the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Gene Brown ("Brown" or "Inmate Brown"), C.O. 1 Ross ("Ross"), C.O. 1 Terra ("Terra"), Lieutenant Rininger ("Rininger"), PSS Dunn ("Dunn"), Superintendent Robert Marsh ("Marsh"), and the Pennsylvania Department of

Corrections ("DOC").[1]  (Doc. No. 1.)  Plaintiff asserts, among other things, that Defendants violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights by failing to protect him from an attack by Brown, a fellow inmate at SCI Benner Township.  (Id.)  Plaintiff seeks monetary damages as well as injunctive and mandamus relief.  (Id. ¶ 1.)  As for his request for injunctive relief, Plaintiff seeks to "enjoin the wrongful conduct of Defendants."  (Id. at 18, 22.)

In an Order dated November 25, 2020, the Court dismissed Inmate Brown as a Defendant, since he did not constitute a state actor for purposes of 42 U.S.C. § 1983, and the Court directed service of the complaint on the remaining Defendants. (Doc. No. 5.)  After receiving several extensions of time, the DOC filed its motion to dismiss on April 20, 2021, along with their brief in support on May 25, 2021. (Doc. Nos. 19, 25.)  By Memorandum and Order, dated June 10, 2021, the Court granted the DOC's motion, dismissed Plaintiff's claims against the DOC with prejudice, and directed the Clerk of Court to terminate the DOC as a Defendant in this action.  (Doc. Nos. 26, 27.)  In addition, the Court informed the parties that this action would proceed as to Plaintiff's claims against Defendants Ross, Terra, Rininger, Dunn, and Marsh, and the Court directed the parties to complete discovery within six (6) months of the date on which Defendants filed their answer.  (Id.)

---

[1]  The Court has taken the spelling of Defendants' names from their briefing.  (Doc. No. 47.)

Defendants filed their answer on June 27, 2021 (Doc. No. 28), and the parties engaged in discovery, which closed on December 27, 2021 (Doc. No. 41).  By Order dated December 13, 2021, the parties were directed to file any dispositive motions within sixty (60) days after the close of discovery.  (Id.)  Consistent with that Order, Defendants filed a motion for summary judgment and statement of material facts on February 25, 2022 (Doc. Nos. 44, 45), followed by a brief in support on March 11, 2022 (Doc. No. 47).  Plaintiff filed a brief in opposition on May 24, 2022 (Doc. No. 56), and Defendants filed a reply brief on June 7, 2022 (Doc. No. 58).

Around the same time period in which Defendants filed their motion for summary judgment, Plaintiff also submitted a variety of discovery-related filings to the Court.  (Doc. Nos. 42, 43, 46.)  In an Order issued on April 6, 2022, the Court addressed one of those filings (Doc. No. 42), wherein Plaintiff had objected to the discovery period closing in this matter.  In that April 6, 2022 Order, the Court directed Defendants to respond to Plaintiff's objection (Doc. No. 50), and Defendants did so on April 13, 2022 (Doc. No. 52).  In their response, Defendants urge the Court to deny Plaintiff's request to reopen discovery because they have responded to all of his discovery requests.  (Id.)  The Court, having reviewed Defendants' response, as well as the various documents filed in support of their response, agrees with Defendants that Plaintiff's request to reopen discovery is moot, as Plaintiff was provided with Defendants' discovery responses. (Doc. Nos.

52-1 through 52-7.)[2]   Accordingly, the Court will not reopen discovery, and the Court will proceed by addressing Defendants' currently pending motion for summary judgment.

## II.   LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).  "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law."  Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  And, a disputed material fact is "genuine . . . [i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]"  See Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991) (citing Anderson, 477 U.S. at 248).

A party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party's

---

[2]  As reflected by the Court's docket, Plaintiff did not file a reply to Defendants' response, or otherwise challenge Defendants' contention, that his request to reopen discovery is now moot.

burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." See id. at 325.

Once the moving party has met its initial burden, the burden shifts to the nonmoving party, who may not rest upon the unsubstantiated allegations or denials of its pleadings and, instead, must go beyond its pleadings, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show a genuine dispute of material fact. See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial[,]" summary judgment is proper. See id. at 322. Summary judgment is also proper if the nonmoving party provides evidence that is "merely colorable" or that "is not significantly probative[.]" See Gray, 957 F.2d at 1078.

In addition, when deciding a motion for summary judgment, "the court must view all evidence and draw all inferences in the light most favorable to the non-moving party[.]" See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008) (citing Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006));

M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 125 (3d Cir. 2020) (stating that, when reviewing a motion for summary judgment, courts are to "view the evidence in the light most favorable to the non-moving party").

## III.   DISCUSSION

### A.   Statement of Material Facts

Under the Court's Local Rules, a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  See M.D. Pa. L.R. 56.1.  In addition, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in [the moving party's statement], as to which [the non-moving party] contend[s] that there exists a genuine issue to be tried."  See id.  All material facts set forth in the moving party's statement "will be deemed to be admitted unless controverted by [the non-moving party's statement]."  See id.

In accordance with the Court's Local Rules, Defendants filed a statement of material facts in support of their motion for summary judgment.  (Doc. No. 45.) Plaintiff, however, did not file his own statement of material facts, responding to the numbered paragraphs set forth in Defendants' statement.  Thus, under the Court's Local Rules, Defendants' facts are deemed admitted since:

A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in *Celotex Corp. v. Catrett*, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial.*' 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted) (emphasis added).

See Williams v. Gavins, No. 1:13-cv-0387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015), aff'd sub nom. Williams v. Gavin, 640 F. App'x 152 (3d Cir. 2016) (emphasis in original) (citation omitted).[3]

Thus, the material facts in this Memorandum are derived from Defendants' statement of material facts. That being said, the Court has conducted a thorough and impartial review of the record in this matter. To the extent that there are any disputed issues of material fact that are unresolved by Defendants' motion for summary judgment, the Court will expressly note such disputes herein.

---

[3] To the extent that the "Statement of Facts" section contained in Plaintiff's brief in opposition could be construed as a statement of material facts (Doc. No. 56 at 6-8), the Court notes that such an independent and non-responsive statement is not permitted by Local Rule 56.1. See M.D. Pa. L.R. 56.1; Barber v. Subway, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015) (stating that a separate, nonresponsive statement of material facts by the non-moving party is "neither contemplated nor permitted by the Local Rules"); Dukes v. Mohl, No. 20-cv-00315, 2022 WL 1667746, at *1 n.2 (M.D. Pa. May 25, 2022) (citing Barber and concluding the same).

7

On February 22, 2020, at SCI Benner Township, Plaintiff received an inmate misconduct for possession or use of a dangerous or controlled substance after providing a "dirty" urine sample that was positive for suboxone. (Doc. No. 45 ¶ 1.) Plaintiff was transferred to the Restricted Housing Unit ("RHU") on February 28, 2020, and he was placed into cell number 2018, pending resolution of his inmate misconduct charges. (Id. at ¶ 2.) On that same date, Defendant Dunn interviewed Plaintiff as part of the RHU intake processing procedure. (Id. at ¶ 3.) Defendant Dunn is employed as a Psychological Services Specialist within the psychology department. (Id. at ¶ 4.) Inmate housing determinations and assignments are not made by the psychology department (id. at ¶ 5), and Defendant Dunn did not know who Plaintiff's cellmate would have been within the RHU at the time of processing Plaintiff there on February 28, 2020 (id. at ¶ 6).

After the completion of the RHU intake processing procedure, two (2) unidentified officers transported Plaintiff to his RHU cell—i.e., cell 2018. (Id. at ¶ 7.) Plaintiff claims that Inmate Brown, Plaintiff's new cellmate, told these officers not to place Plaintiff into cell 2018 or there would be a problem. (Id. at ¶ 8.) However, Inmate Brown did not make any verbal threat towards Plaintiff on February 28, 2020, February 29, 2020, or March 1, 2020. (Id. at ¶ 9.) Similarly, prior to March 2, 2020, Inmate Brown never touched Plaintiff. (Id. at ¶ 10.) In fact,

prior to Plaintiff's cell assignment on February 28, 2020, he did not know Inmate Brown.  (Id. at ¶ 11.)

Plaintiff claims that, during the afternoon of March 2, 2020, while he was being transported to the shower, he reported to Defendants Terra and Ross that he felt "uncomfortable" with Inmate Brown in his cell.  (Id. at ¶ 12.)   Plaintiff claims that, during this conversation, he reported to Defendants Terra and Ross that:

> [S]omething is wrong with this guy.  He talks to himself.  He paces the floor all times of hours of the night.  Something is wrong with him.  I had [sic] don't feel comfortable in this cell.  You all need to move me.

(Id. at ¶ 13.)  Plaintiff also claims that he reported to Defendants Terra and Ross that Inmate Brown was "unstable" and a "psychopath."  (Id. at ¶ 14.)

Sometime during the late evening of March 2, 2020, Inmate Brown attacked Plaintiff.  (Id. at ¶ 15.)  During a security round of the block, prison staff observed that the window to cell 2018 was covered with a towel.  (Id. at ¶ 16.)  After multiple orders to uncover the window were disregarded, officers deployed OC spray into the cell to gain compliance with those orders.   (Id. at ¶ 17.)   Inmate Brown then uncovered the window.  (Id. at ¶ 18.)  Officers observed Plaintiff lying on the cell floor with blood present in the cell.  (Id. at ¶ 19.)  After the inmates were secured, medical staff assessed Plaintiff, and he was transported to a local hospital for treatment and further assessment.  (Id. at ¶ 20.)

After returning to SCI Benner Township from his hospital stay, Plaintiff pleaded guilty at a disciplinary hearing on March 10, 2020, to the inmate misconduct charge of possession or use of a dangerous or controlled substance.  (Id. at ¶ 21.) The hearing examiner sentenced Plaintiff to the loss of his prison job and thirty (30) days disciplinary custody time, effective on February 28, 2020.  (Id. at ¶ 22.)

On or around March 9, 2020, Plaintiff filed an inmate grievance concerning the attack by Inmate Brown.  (Id. at ¶ 23.)  In doing so, Plaintiff sought no monetary relief.  (Id. at ¶ 24.)  Plaintiff withdrew that grievance on or about March 18, 2020. (Id. at ¶ 25.)   However, Plaintiff filed a second inmate grievance concerning the attack by Inmate Brown on March 26, 2020.  (Id. at ¶ 26.)  Plaintiff received a grievance rejection form on or about March 27, 2020, because the issues he presented in his second grievance concerned matters that were already presented in his first grievance. (Id. at ¶ 27.)  Plaintiff appealed that decision, claiming that he only withdrew the first grievance because he was "on pain medication and suffering from head injuries that did not allow [him] to make rational decisions." (Id. at ¶ 28.) Plaintiff then received a remanded rejection form, which rejected his second grievance because: (1) the grievance was not submitted within fifteen (15) days after the complained-of-events; (2) the grievance exceeded the two (2) page limit; and (3) the issues within the grievance were identical as to those previously submitted within the first grievance.  (Id. at ¶ 29.)  Plaintiff attempted to appeal this decision to the

Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), thereby skipping the two procedural predicates, which Defendants contend are required prior to appealing to SOIGA—that is, receiving an initial grievance review response and a facility manager response. (Id. at ¶ 30.) Plaintiff then appealed his inmate grievance rejection to the Facility Manager on or about June 12, 2020. (Id. at ¶ 31.) The Facility Manager upheld the initial grievance rejection because the grievance was filed after the fifteen (15) day period filing requirement, the grievance exceeded the two (2) page limit, and the grievance raised issues already grieved in the prior grievance that Plaintiff had withdrawn. (Id. at ¶ 32.) Plaintiff did not file any other appeals regarding his grievances that pertained to the events with Inmate Brown. (Id. at ¶ 33.)

## B. Defendants' Arguments

### 1.  Official Capacity Claims Against Defendants

Plaintiff has brought this civil rights action under 42 U.S.C. § 1983. (Doc. No. 1.) Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

11

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).

However, § 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).  Thus, in order for a plaintiff to state a claim under Section 1983, he must allege "a deprivation of a federally protected right and that this deprivation was committed by [a person] acting under color of state law."  See Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005) (citation and internal quotation marks omitted).

Here, Plaintiff has sued Defendants in both their individual and official capacities.  (Doc. No. 1.)  In moving for summary judgment, however, Defendants argue that, to the extent they have been sued in their official capacities, they do not qualify as "persons" subject to suit under § 1983.  (Doc. No. 47 at 13.)  As such, they request the Court to dismiss, with prejudice, any § 1983 claims that Plaintiff has asserted against them in their official capacities.  (Id.)  The Court agrees, but only in part.

While Defendants quite "literally are persons[,]" a suit for monetary damages brought against a state official in his official capacity is not a suit against that official; it is a suit against that official's office. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Allen v. New Jersey State Police, 974 F.3d 497, 506 (3d Cir. 2020). This is no different from a suit against the State itself, which is barred by the Eleventh Amendment unless (1) the State has waived its immunity or (2) Congress has exercised its power under § 5 of the Fourteenth Amendment to override that immunity. See Will, 491 U.S. at 66, 70-71.

The Court finds that these two (2) exceptions to Eleventh Amendment immunity, a state waiver or congressional abrogation, do not apply here. As explained by the United States Court of Appeals for the Third Circuit, "Pennsylvania has not waived its sovereign immunity defense in federal court[,]" and "Congress did not abrogate Eleventh Amendment immunity via § 1983[.]" See Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020) (citation omitted; see also 42 Pa. Stat. and Cons. Stat. Ann. § 8521(b) (stating that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"); Quern v. Jordan, 440 U.S. 332, 345 (1979) (concluding that the history and language of 42 U.S.C. § 1983 establish that Congress did not intend to make the States liable under that statute). Thus, to the extent that Defendants seek

dismissal of Plaintiff's § 1983 claims for monetary damages against Defendants in their official capacities, the Court concludes that Defendants are entitled to summary judgment. See Will, 491 U.S. at 61-71.

To the extent, however, that Defendants seek dismissal of Plaintiff's § 1983 claims for prospective injunctive, the Court concludes that Defendants are not entitled to summary judgment. When a plaintiff sues state officials in their official capacities for prospective injunctive relief under § 1983, Eleventh Amendment immunity is not extended to those officials. See id. at 71 n.10 (noting that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State" (citations omitted)); Iles v. de Jongh, 638 F.3d 169, 177 (3d Cir. 2011) (explaining that a state employee may be sued in his official capacity, not "for all injunctive relief," but rather, only for "*prospective* injunctive relief," because official-capacity claims for prospective injunctive relief are not treated as actions against the State (citing Will, 491 U.S. at 71 n.10) (emphasis in original)).

Accordingly, for all of these reasons, the Court will grant Defendants' motion to the extent that they seek summary judgment on Plaintiff's § 1983 official-capacity claims against Defendants for monetary damages. The Court will deny, however,

Defendants' motion to the extent that they seek summary judgment on Plaintiff's § 1983 official-capacity claims against Defendants for prospective injunctive relief.

## 2. Personal Involvement

In a § 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." See Ashcroft v. Iqbal, 556 U.S. 662, 676 (1976). Thus, in order to state a claim under § 1983, a plaintiff must sufficiently allege that the defendants had personal involvement in the act or acts that the plaintiff claims violated his constitutional rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)). Thus, a plaintiff may not rely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago v. Warminster

Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

Here, Defendants argue that there are neither any allegations in the complaint, nor any evidence in the summary judgment record, that would establish that either Defendant Marsh or Defendant Dunn were personally involved in the alleged wrongdoing. (Doc. No. 47 at 16-18.) Defendants further argue that without Plaintiff showing such personal involvement, they cannot be held liable under § 1983. (Id.) Plaintiff, despite filing a lengthy oppositional brief (Doc. No. 56), has not opposed these arguments.

### a.    Claims Against Defendant Marsh

Defendant Marsh, who has been named as the Superintendent of SCI Benner Township in Plaintiff's complaint, is a supervisory official. (Doc. No. 1 ¶ 13.) In the context of § 1983, the United States Court of Appeals for the Third Circuit has recognized two theories of supervisory liability. See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). Under one theory, a supervisor can be held liable if it is shown that he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." See id. (citation and internal quotation marks omitted) (alteration in original); Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016). Under the other theory, a supervisor can be held liable if it is shown that

he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." See A.M. ex rel. J.M.K., 372 F.3d at 586; Parkell, 833 F.3d at 330.

Here, the Court finds that there are no well-pleaded allegations in the complaint that would raise the inference, and there is no evidence in the summary judgment record that would create a genuine dispute of material fact, that Plaintiff has established either one of these theories of supervisory liability against Defendant Marsh.  Indeed, there are neither allegations nor evidence to show that Defendant Marsh participated, directed, or knew of and acquiesced in, the attack on Plaintiff, or that Defendant Marsh was deliberately indifferent to the consequences of a policy, practice, or custom that he had established and maintained.  While the complaint contains conclusory allegations regarding "customs," "practices," and "policies" (Doc. No. ¶¶ 54-57, 74, 79), the complaint does not contain any specific facts regarding those customs, practices and policies, nor does it contain any specific facts that Defendant Marsh knew of consequences flowing from those customs, practices, and policies yet disregarded those consequences.  Moreover, the law is clear that such conclusory allegations are not entitled to the assumption of truth.  See Ashcroft, 556 U.S. at 679 (stating further that "conclusions[ ] are not entitled to the assumption of truth[,]" and "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"); Fowler v. UPMC Shadyside, 578

F.3d 203, 210–11 (3d Cir. 2009) (explaining that while a court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions" (citation omitted)).

Additionally, where, as here, Plaintiff faces a motion for summary judgment, he "must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 291 (3d Cir. 2018); Waugaman v. City of Greensburg, 841 F. App'x 429, 432 (3d Cir. 2021) (observing that precedent from the Third Circuit Court of Appeals requires a § 1983 plaintiff to produce evidence that supports the personal involvement of each individual defendant). Plaintiff, however, has not done this.

Accordingly, for all of these reasons, the Court finds that the complaint fails to allege particular allegations of personal involvement on the part of Defendant Marsh.  The Court further finds that Plaintiff has not pointed to any evidence in the summary judgment record that would otherwise demonstrate Defendant Marsh's personal involvement in the alleged wrongdoing. Thus, the Court will grant Defendants' motion for summary judgment on this basis, and the Court will dismiss Plaintiff's § 1983 claims against Defendant Marsh.

**b.** **Claims Against Defendant Dunn**

Plaintiff has named Defendant Dunn as the "Psychiatrist Social Service Liaison" in his complaint, and Plaintiff alleges that Defendant Dunn conducted his psychological evaluation upon being admitted to the RHU on February 28, 2020. (Doc. No. 1 ¶ 25.)  Plaintiff also alleges that Defendant Dunn's training "led her to believe she was correct when placing [him] in the same cell with [Inmate] Brown." (Id. ¶ 26.)  The undisputed material facts establish, however, that while Defendant Dunn interviewed Plaintiff as part of the RHU intake processing procedure (Doc. No. 45 ¶ 3), she is employed within the psychology department (id. at ¶ 4), and the psychology department does not make inmate housing determinations or assignments (id. at ¶ 5). The undisputed material facts further establish that Defendant Dunn did not know who Plaintiff's cellmate would have been in the RHU at the time of processing Plaintiff on February 28, 2020.  (Id. at ¶ 6.)

Thus, the Court finds that Plaintiff has not pointed to any evidence in the summary judgment record that would establish or otherwise create a genuine dispute of material fact that Defendant Dunn was involved in the asserted violations of Plaintiff's constitutional rights.  More specifically, the Court finds that Plaintiff has not pointed to any evidence that Defendant Dunn participated in or knew of and acquiesced in such asserted violations.  See Jutrowski, 904 F.3d at 291 (stating that, "in the face of [a] motion for summary judgment, a § 1983 plaintiff must produce

evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial"); <u>Iqbal</u>, 556 U.S. at 676 (stating that in §1983 suits, plaintiffs must establish that "each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Accordingly, the Court will grant Defendants' motion for summary judgment on the basis that Plaintiff has failed to submit, or otherwise point to, any evidence that would support a finding that Defendant Dunn was personally involved in the asserted constitutional violations. As such, Plaintiff's § 1983 claims against Defendant Dunn will be dismissed from this action.

### 3.    Fourth Amendment Claim

In the complaint, Plaintiff asserts violations of his constitutional rights under the Fourth Amendment to the United States Constitution.  (Doc. No. 1 at 17, 19.) The Fourth Amendment, which applies to the States through the Fourteenth Amendment, <u>see</u> <u>Bailey v. United States</u>, 568 U.S. 186, 192 (2013), provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

See U.S. Const. amend. IV. Thus, there are two (2) clauses in the Fourth Amendment, one pertaining to "searches and seizures" and the other pertaining to "[w]arrants." See id.

In moving for summary judgment, Defendants argue that Plaintiff's Fourth Amendment claim fails as a matter of law because it is inapplicable to the facts that are alleged in his complaint. (Doc. No. 47 at 18-19.)  The Court agrees.  Plaintiff's complaint neither makes any specific allegations of an unreasonable search or seizure, nor makes any specific allegations of a warrant that was unsupported by probable cause.  (Doc. No. 1.)  Additionally, Plaintiff has not pointed to any evidence in the summary judgment record that would otherwise touch upon these tenets of the Fourth Amendment.[4]  And, finally, the Court observes that, despite Plaintiff filing a brief in opposition to Defendants' motion for summary judgment, he has not opposed their argument that his Fourth Amendment claim fails as a matter of law. (Doc. No. 56.)  Accordingly, the Court will grant Defendants' motion for summary

---

[4]  To the extent that Plaintiff's complaint can be construed as asserting the use of excessive force in violation of the Fourth Amendment's protection against unreasonable seizures, the Court notes that both the allegations in Plaintiff's complaint and the undisputed material facts in the summary judgment record establish that it was Inmate Brown who attacked Plaintiff on March 2, 2020, and not a governmental actor. See United States v. Jacobsen, 466 U.S. 109, 113 (1984) (explaining that the Fourth Amendment's protections against unreasonable searches and seizures proscribes "only governmental action"); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (noting that the protections of the Fourth Amendment are only triggered by governmental action (citations omitted)).

judgment on this basis, and the Court will dismiss Plaintiff's Fourth Amendment claim from this action.

### 4.    Fifth Amendment Claim

In the complaint, Plaintiff asserts violations of his constitutional rights under the Fifth Amendment to the United States Constitution.  (Doc. No. 1 at 17, 19.)  In moving for summary judgment, Defendants argue that Plaintiff's Fifth Amendment claim fails as a matter of law because the due process clause contained in the Fifth Amendment is inapplicable to state officials.  (Doc. No. 47 at 19-20.)  The Court agrees.

The Fifth Amendment provides, in pertinent part, that "[n]o person shall be . . . . deprived of life, liberty, or property, without due process of law[.]"  See U.S. Const. amend. V.  The provisions of the Fifth Amendment only concern, however, federal action, not state or private action.  See, e.g., Dusenbery v. United States, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); Nguyen v. U.S. Cath. Conf., 719 F.2d 52, 54 (3d Cir. 1983) ("The limitations of the [F]ifth [A]mendment restrict only federal governmental action and not the actions of private entities." (citing Public Utilities Commission v. Pollak, 343 U.S. 451, 461 (1952)); Nemeth v. Off. of Clerk of Superior Ct. of New Jersey, 837 F. App'x 924,

929 n.5 (3d Cir. 2020) (noting that the district court had properly concluded that, because all of the named defendants were state and private officials and entities, the plaintiff could not pursue a Fifth Amendment claim against any of them because the Fifth Amendment's due process clause only "protects against federal governmental actions, not state actions").

Here, all of the remaining Defendants are employees of the DOC who work at SCI Benner Township.  (Doc. No. 1.)  All of the remaining Defendants are, therefore, state employees, not federal employees.  Thus, to the extent that Plaintiff's complaint can be construed as asserting a Fifth Amendment due process claim against these state-Defendants, the Court finds that this claim fails as a matter of law. The Court will, therefore, grant Defendants' motion for summary judgment on this basis, and the Court will dismiss Plaintiff's Fifth Amendment claim from this action.

### 5.    Eighth Amendment Claim

Plaintiff asserts violations of his constitutional rights under the Eighth Amendment to the United States Constitution. (Doc. No. 1 at 17, 19.)  He alleges that Defendants Ross, Terra, and Rininger were deliberately indifferent to his safety by failing to protect him from Inmate Brown's attack on March 2, 2020, in the RHU. (Id. at 17-22.)  Defendants argue, however, that Plaintiff's allegations rise only to the level of negligence and, thus, are insufficient to amount to deliberate indifference under the Eighth Amendment.  (Doc. No. 47 at 20-26.)

The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Glossip v. Gross, 576 U.S. 863, 876 (2015).  In order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" See Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Regarding the first prong, life's necessities include food, clothing, shelter, medical care, and reasonable safety.  See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 418 (3d Cir. 2000) (stating that "when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety" (citation omitted)).  Regarding the second prong, a prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety"—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (explaining that the official "must

24

actually be aware of" the existence of the substantial risk and that "it is not sufficient that the official should have been aware" (citing <u>Farmer</u>, at 837-38)).

In reviewing the instant matter, the Court finds that there is a genuine dispute of material fact as to whether Defendants Ross, Terra, and Rininger acted with deliberate indifference to Plaintiff's safety.  With respect to Defendants Ross and Terra, Plaintiff testified at his deposition that, on March 2, 2020, when Plaintiff was being transported to the shower in the RHU, the following exchange occurred:

> I asked Terra and Ross[ ] when they took me out of the shower, would they move my cell. And they asked me—and that's when they asked me why do you want to be moved, and I said, I told them something is wrong with this guy [(i.e., Inmate Brown)].  He talks to himself.  He paces the floor all times of hours of the night.  Something is wrong with him.  I had don't [sic] feel comfortable in this cell.  You all need to move me.
>
> And Terra asks me, where do you want to go?  I called down over the railing, and I called down and asked someone, another inmate what cell they were in.  And Terra and Ross[ ] told me, well, we are not making non moves right now.  You are just going to have to deal with it.

(Murdock Dep. 19:10-24, Doc. No. 45-3 at 20.)  During this same conversation, Plaintiff also told Defendants Ross and Terra that Inmate Brown was "unstable." (Murdock Dep. 20:2-6, Doc. No. 45-3 at 21.)

In addition to this shower transport, Plaintiff also testified that Defendants Terra and Ross would go to cell 2018, where Plaintiff and Inmate Brown were both housed, and Inmate Brown:

Would just F this, F that, I am going to kill this, I am going–it was just–
the way he would talk, the way he would carry himself. He would never
get in the shower.  You can tell if you look at this guy something is
wrong with him.  He is not–something is off about this guy. And that's
what I mean when I say that psychotic–like you can tell something is
wrong.

(Murdock Dep. 20:21-21:8, Doc. No. 45-3 at 21-22.)

Similarly, with respect to Defendant Rininger, Plaintiff testified as follows:

Lieutenant Rininger would constantly walk around the RHU or come
to inmate's [sic] cells because guys wanted to get out of the RHU or
needed things that wasn't being provided to them.  Lieutenant Rininger
came to my cell 218[5] on several occasions before this incident ever
happened to me.

The first time Lieutenant Ringer came to my cell was to see Inmate
Brown.  And Inmate Brown had a problem because . . . his RHU time
. . . was complete, and he kept telling Lieutenant Rininger that I don't
belong in the RHU no more, you all need to get me out of here.

So because I started to notice that this guy would get upset, I as well
called Lieutenant Rininger to the cell and told him I think you need to
move me.  I don't feel comfortable.  On several occasions he was at my
door, I believe it was no more than two or three times.  Once for Inmate
Brown and I believe I contacted him twice to come to the cell, to help
us—well, to help me in this situation.

(Murdock Dep. 29:8-30:3, Doc. No. 45-3 at 30-31.)

The Court, in viewing this evidence, and in drawing all reasonable inferences

in the light most favorable to Plaintiff as it is required to do at the summary judgment

stage, finds that there is a genuine dispute of material fact as to whether Defendants

---

[5]  DOC documentation suggests that this cell is officially referred to as cell "2018."
(Doc. No. 45-2 at 3.)

Ross, Terra, and Rininger acted with deliberate indifference to Plaintiff's safety. Specifically, the Court finds that the statements Plaintiff made to Defendants Ross, Terra, and Rininger coupled with their own observations of Inmate Brown at cell 2018, raise a genuine dispute of material fact as to (a) whether these Defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed to Plaintiff's safety and (b) whether they actually drew that inference.  See Farmer, 511 U.S. at 837.[6]

Despite a defendant's participation in constitutionally impermissible conduct, he may still be shielded from liability for civil damages if he can show that he is entitled to qualified immunity.  See Hope v. Pelzer, 536 U.S. 730, 739 (2002).  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)).

Although Defendants did not raise this defense until they filed their reply brief (Doc. No. 58 at 13-15), the Court will briefly address their qualified immunity

---

[6] The Court recognizes that Defendants have made effective arguments (Doc. No. 47 at 20-26) and that this case certainly presents a close call.  In accordance with the governing legal standard, however, the Court must resolve this close call in favor of Plaintiff, the non-moving party.  See M.S. by & through Hall, 969 F.3d at 125 (stating that, when reviewing a motion for summary judgment, courts are required to "view the evidence in the light most favorable to the non-moving party").

defense.  As discussed above, the Court has already determined that, with respect to Plaintiff's Eighth Amendment failure-to-protect claim, there is a genuine dispute of material fact as to whether Defendants Ross, Terra, and Rininger acted with deliberate indifference to an excessive risk of harm to Plaintiff's safety.  "Because [such] deliberate indifference under *Farmer* requires actual knowledge or awareness on the part of the defendant, a defendant cannot have qualified immunity if [he or] she was deliberately indifferent[.]"  Beers-Capitol, 256 F.3d at 143 n.15.  As explained by the United States Court of Appeals for the Third Circuit, "[c]onduct that is deliberately indifferent to an excessive risk [of harm to Plaintiff] cannot be objectively reasonable conduct."  See id. (citing Carter v. City of Philadelphia, 181 F.3d 339, 356 (3d Cir. 1999) for the following: "if the plaintiff succeeds in establishing that the defendants acted with deliberate indifference to constitutional rights, then *a fortiori* the defendants' conduct was not objectively reasonable, and hence the defense of qualified immunity would not be available to defendants").

Accordingly, because a genuine dispute of material fact exists as to whether Defendants Ross, Terra, and Rininger were deliberately indifferent to a serious risk of harm to Plaintiff, the Court finds that Defendants have not carried their burden to establish that they are entitled to such immunity.  See id. (stating that, "[b]ecause there is a genuine issue of fact as to whether [defendant] was deliberately indifferent, [defendant] has not carried her burden to establish that she is entitled to [qualified]

immunity"). The Court will, therefore, deny Defendants' motion for summary judgment on this basis. See, e.g., Burk v. Runk, No. 19-cv-01358, 2021 WL 6126233, at *8 (M.D. Pa. Dec. 28, 2021) (finding that, "[b]ecause [plaintiff] ha[d] made a showing sufficient to overcome Defendants' Rule 56 motion as to the merits of [plaintiffs] failure-to-protect claim, [plaintiff] has also made a showing sufficient to overcome any claim to qualified immunity" (citation, and internal citation and quotation marks omitted)); Miller v. Bedford Cnty., No. 18-cv-10, 2022 WL 969963, at *8 (W.D. Pa. Mar. 31, 2022) (stating that "[t]he Third Circuit has explained, in the context of an Eighth Amendment claim, that when a plaintiff makes a showing sufficient to overcome summary judgment on the merits, [he or she has] also made a showing sufficient to overcome any claim to qualified immunity" (citation and internal quotation marks omitted); Tuite v. New Jersey, No. 10-cv-06772, 2014 WL 5035707, at *6 (D.N.J. Oct. 8, 2014) (explaining that, "[w]here there is a factual dispute material to the issue of deliberate indifference, a court cannot grant summary judgment on the basis of qualified immunity" (citation omitted)).

### 6. Fourteenth Amendment Claims

Plaintiff asserts violations of his constitutional rights under the Fourteenth Amendment to the United States Constitution. (Doc. No. 1 at 17, 19.) Defendants argue, and the Court agrees, that Plaintiff has not clearly identified the contours of this claim. (Doc. No. 47 at 26-28.) In his reply brief to Defendants' motion for

summary judgment, however, Plaintiff appears to clarify his Fourteenth Amendment claim by asserting two (2), distinct grounds.  (Doc. No. 56 at 23-24.)  The first ground he asserts is that prison conditions, which impose a significant hardship on a prisoner, such as being assaulted by another prisoner, "may create a liberty interest protected by the Due-Process Clause."  (Id. at 23 (citation and internal quotation marks omitted).)  The second ground he asserts is that he was treated differently from similarly situated individuals in violation of the Equal Protection Clause.  (Id. at 23-24.)  The Court addresses both grounds in turn.

### a.    Due Process

The Fourteenth Amendment provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]"  See U.S. Const. amend. XIV.  Because it is unclear whether Plaintiff's complaint seeks to assert a procedural or substantive due process claim under the Fourteenth Amendment, the Court will treat the complaint as asserting both claims.

With respect to a procedural due process claim, the Court observes that "'[a] liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies.'"  Porter, 974 F.3d at 437-38 (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (alteration added)).  In order "'[t]o establish [a state-created liberty interest under the Fourteenth Amendment] in the conditions of

confinement context, courts generally require a showing that the alleged liberty interest is substantial.'"   See id. at 438 (quoting Williams v. Sec'y Pennsylvania Dep't of Corr., 848 F.3d 549, 559 (3d Cir. 2017) (alterations in original).  Thus, "[t]o rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  See id. (citing Williams v. Secretary Pennsylvania Department of Corrections, 848 F.3d 549, 559 (3d Cir. 2017) (emphasis omitted)).

Applying these principles here, the Court finds that Plaintiff's complaint has failed to identify a legally cognizable liberty interest concerning his freedom from restraint.  See Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (explaining that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . [b]ut these interests will be generally limited to freedom of restraint, which while not exceeding the sentence in such an unexpected manner as to give to protection by the Due Process by its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").  Accordingly, because Plaintiff has not identified a cognizable liberty interest, the Court concludes that Plaintiff's Fourteenth Amendment procedural due process claim fails as a matter of law.  As such, the Defendants are entitled to summary judgment with respect to this claim.

With respect to a substantive due process claim, the Court observes that the Due Process Clause of the Fourteenth Amendment "'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'"  See Porter, 974 F.3d at 447 (quoting L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 241 (3d Cir. 2016)).  As explained by the United States Court of Appeals for the Third Circuit, however, "'the substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that shocks the conscience.'"  See id. (quoting Fagan v. City of Vineland, 22 F.3d 1296, 1303 (3d Cir. 1994) (some internal quotation marks omitted)).

The United States Supreme Court "'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'"  See id. (quoting Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992)).  Thus, "[u]nder the more-specific-provision rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'"  See id. (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).

Applying these principles here, the Court finds that, to the extent Plaintiff's complaint can be construed as asserting a Fourteenth Amendment substantive due process claim, this claim challenges the same conduct that his Eight Amendment claim challenges—i.e., that Defendants acted with deliberate indifference in failing to protect him from Inmate Brown's attack.  Under these circumstances, the more-specific-provision rule requires that Plaintiff's substantive due process claim be analyzed under the constitutional provision of the Eighth Amendment, rather than the rubric of substantive due process.  Because of this rule, the Court concludes that Defendants are entitled to summary judgment with respect to Plaintiff's Fourteenth Amendment substantive due process claim.  See id. at 447-48 (holding that a state prisoner's substantive due process claim challenged the same conduct as his Eighth Amendment claim and was thus barred under the more-specific-provision rule where there were no distinct facts that applied only to his substantive due process claim).

Thus, for all of the foregoing reasons, the Court finds that Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment procedural and substantive due process claims.  The Court will, therefore, grant Defendants' motion for summary judgment and dismiss Plaintiff's Fourteenth Amendment due process claims from this action.

**b.     Equal Protection**

Although the Court has liberally and generously construed Plaintiff's complaint as raising Fourteenth Amendment procedural and substantive due process claims, the Court finds that Plaintiff's complaint cannot be read as asserting a violation of the Equal Protection Clause of the Fourteenth Amendment.  (Doc. No. 1.)  As argued by Defendants, and accepted by the Court, Plaintiff has asserted this claim for the first time in his oppositional brief to Defendants' motion for summary judgment.  (Doc. No. 56 at 23-24.)  Plaintiff, however, is not permitted to do so.  See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (stating that [i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); Warfield v. SEPTA, 460 F. App'x 127, 132 (3d Cir. 2012) (stating that "[a] plaintiff may not amend a complaint by raising arguments for the first time in a brief in opposition to a motion for summary judgment"); Bell v. City of Philadelphia, 275 F. App'x 157, 160 (3d Cir. 2008) (stating that a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment").

Even if the Court assumed, however, that Plaintiff asserted an equal protection claim in the complaint, the Court would still find that this claim fails as a matter of law.  The Equal Protection Clause of the Fourteenth Amendment provides that "no State . . . shall deny to any person within its jurisdiction the equal protection of the

laws[.]"  See U.S. Const. amend. XIV.  This is, "essentially[,] a direction that all persons similarly situated should be treated alike."  See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted).   Quite simply, the Court finds that Plaintiff's complaint raises no allegations, whatsoever, that he was treated differently from others who were similarly situated or that Defendants have otherwise denied him equal protection of the laws.

Accordingly, for all of these reasons, the Court finds that Defendants are entitled to summary  judgment with respect to Plaintiff's purported Fourteenth Amendment equal protection claim.  The Court will, therefore, grant Defendants' motion on this basis and dismiss this claim from the litigation.

### 7.    Exhaustion

In the complaint, Plaintiff has requested $250,000 in monetary relief against Defendants.  (Doc. No. 1 at 18, 22.)  Defendants argue, however, that Plaintiff did not exhaust his administrative remedies with respect to this request for relief.  (Doc. No. 47 at 13-16.)  Defendants further argue that, because Plaintiff did not exhaust such remedies, he is barred from seeking monetary relief in this suit.  (Id.)

The Prison Litigation Reform Act ("PLRA") provides that "'[n]o action shall be brought with respect to prison conditions under section 1983  . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'"  See Paladino v. Newsome, 885 F.3d 203,

207 (3d Cir. 2018) (quoting 42 U.S.C. § 1997e(a)) (alteration in original).  In other words, exhaustion of available administrative remedies is a prerequisite for Plaintiff bringing this suit under § 1983.[7]  See Ross v. Blake, 578 U.S. 632, 638 (2016) (explaining that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies") (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006))); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)).

The "stringent requirements" of the PLRA are designed to, among other things, "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits,"  See Downey, 968 F.3d at 305 (citation and internal quotation marks omitted) (alterations added)); Jones, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").

---

[7]  At the time Plaintiff brought this litigation, he was incarcerated at SCI Benner Township.  (Doc. No. 1 at 27.)

This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." See Porter v. Nussle, 534 U.S. 516, 532 (2002) (citation omitted).  Additionally, this exhaustion requirement mandates proper exhaustion, "meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" See Downey, 968 F.3d at 305 (quoting Woodford, 548 U.S. at 88).  And, the applicable "procedural rules are supplied by the individual prisons." See id. (citations omitted); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ." ).

As explained by the United States Court of Appeals for the Third Circuit, however, "administrative remedies must be available to the prisoner." See Downey, 968 F.3d at 305 (citation omitted).  Administrative remedies are deemed unavailable when they operate as a "dead end[,]" are "so opaque" that they become, "practically speaking, incapable of use," or when prison employees "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." See id. (citing Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)).  Thus, "[j]ust as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their

37

own policies." See id. (citation omitted); Jones, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion" (alteration added).

The DOC's Inmate Grievance Policy is set forth in DC-ADM 804.[8] It contains the procedural rules that apply here to Plaintiff's lawsuit, and it sets forth a multi-tiered grievance system, pursuant to which: (1) a prisoner is required to submit a written grievance within fifteen (15) working days of the alleged incident to the Facility Grievance Coordinator for initial review; (2) the prisoner is then required to submit a written appeal within fifteen (15) working days of an adverse decision to the Facility Manager; and (3) finally, the prisoner is required to submit an appeal of an adverse decision within fifteen (15) workings days to the Secretary's Office of Inmate Grievances and Appeals.  See  DC-ADM 804, Inmate Grievance System Procedures Manual, §§ 1-2.

---

[8] DC-ADM 804 is available on the DOC's website at: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf. The current version was issued on April 27, 2015, and became effective on May 1, 2015. Thus, DC-ADM 804 preceded, and thus governs, the events that Plaintiffs complains of here.  (Doc. No. 1 (complaining of events that occurred in February of 2020).)

In the instant matter, Defendants have addressed this multi-tiered system in their statement of material facts, and they have outlined the various steps that Plaintiff had taken, or had failed to take, with respect to the grievances he filed concerning this lawsuit.  (Doc. No. 45 ¶¶ 23-33.)  In seeming connection with those facts, Defendants raise the following argument:

> Notwithstanding [the] preserved issue [of whether Plaintiff properly exhausted his claims], Plaintiff failed to exhaust his administrative remedies with respect to any monetary relief sought within the instant litigation.  Within his Complaint, Plaintiff's request for relief includes a request for $250,000.00, with costs of suit, attorneys' fees, punitive damages, nominal damages, actual damages, interests, exemplary damages, and other relief with respect to both Count I and Count II in the complaint.  Within his **grievance** filed about the events herein, however, Plaintiff made no request for monetary relief.  As he failed to request any monetary relief within his **grievance**, Plaintiff failed to properly exhaust his remedies with respect to any request for any monetary relief, and, therefore, he is subsequently barred from seeking any such monetary damages in the instant litigation.

(Doc. No. 47 at 15-16 (emphasis added).)

Thus, from what the Court can discern, there are two (2) parts to Defendants' argument: the first part being, they explicitly preserve the issue of whether Plaintiff properly exhausted his administrative remedies with respect to the claims in this litigation; and the second being, notwithstanding this issue of proper exhaustion, Plaintiff did not exhaust his remedies with respect to his request for monetary relief in the complaint.  (Id.)  Because Defendants do not set forth any substantive arguments as to whether Plaintiff properly exhausted his administrative remedies

with respect to the claims in this litigation, the Court will only address Defendants'
remaining argument—whether Plaintiff exhausted his administrative remedies with
respect to his request for monetary relief.

At the outset, the Court observes that, to the extent Defendants are arguing
that an inmate's failure to request monetary relief in his initial grievance is fatal to
the inmate's subsequent request for monetary relief in a lawsuit, Defendants are
correct.   DC-ADM 804 specifically provides what an inmate must include in his
initial grievance, including with respect to his request for relief:

> 11. The text of the grievance must be legible, understandable, and
> presented in a courteous manner. The inmate must include a statement
> of the facts relevant to the claim.
>
> > a. The statement of facts shall include the date, approximate time,
> > and location of the event(s) that gave rise to the grievance.
> >
> > b. The inmate shall identify individuals directly involved in the
> > event(s).
> >
> > c. The inmate shall specifically state any claims he/she wishes to
> > make concerning violations of Department directives, regulations,
> > court orders, or other law.
> >
> > d. If the inmate desires compensation or other legal relief normally
> > available from a court, the inmate **must** request the specific relief
> > sought in his/her initial grievance.

<u>See</u> DC-ADM 804, Inmate Grievance System Procedurals Manual, § 1.A.11
(emphasis added).

Thus, while the Court acknowledges that Defendants are correct that Plaintiff was required to seek monetary relief in his initial grievance, since he seeks monetary relief in this litigation, the Court still finds that Defendants have not met their burden of proof. The undisputed material facts establish that Plaintiff filed two (2) separate grievances concerning the events that occurred on March 2, 2020, when Inmate Brown attacked Plaintiff in the RHU. (Doc. No. 45 ¶¶ 23, 26.) The first grievance was filed on or about March 9, 2020, and the second grievance was filed on or about March 26, 2020. (Id.) Defendants, however, have only addressed whether Plaintiff sought monetary relief in his first grievance (i.e., the March 9, 2020 grievance), and they have not addressed whether Plaintiff sought any monetary relief in his second grievance (i.e., the March 26, 2020 grievance). (Doc. No. 47 at 13-16; Doc. No. 45 ¶ 23-33.)

Although the Court will not presume why Defendants have failed to address this second grievance, the Court has reviewed the contents of this grievance, and the Court observes that Plaintiff did seek, among other things, "compensatory damages" in this grievance. (Doc. No. 45-7 at 13.) Accordingly, to the extent Defendants argue that Plaintiff did not exhaust his request for monetary relief, such that he is barred from seeking such relief in this action, the Court finds that Defendants have not met their burden of proof. See Downey, 968 F.3d at 305 (explaining that the "[f]ailure to exhaust is an affirmative defense that the defendant must plead and

prove" (citations omitted)).  The Court will, therefore, deny Defendants' motion for summary judgment on the basis that Plaintiff failed to exhaust his request for monetary relief.

### 8. __Monell__ Claims

In the complaint, Plaintiff asserts __Monell__ claims against all Defendants.  (Doc. No. 1  ¶¶ 67, 78.)   Under the seminal case giving such claims their name, the United States Supreme Court held that municipalities cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of its employees on a theory of <u>respondeat superior</u>.  <u>See</u> <u>Monell</u>, 436 U.S. at 691.   Instead, "the municipality can only be [held] liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom."  <u>See</u> <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996) (citation omitted).   Accordingly, the municipality "can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom."  <u>See</u> <u>id.</u> (citation omitted).

Here, however, the remaining Defendants consist of individual persons who are employed by the DOC and work at SCI Benner Township.   None of these Defendants constitute a municipality, as contemplated by the line of case law stemming from <u>Monell</u>.   Accordingly, to the extent that Plaintiff's complaint asserts that these individual Defendants are liable under <u>Monell</u>, his claims fail.  The Court

will, therefore, grant Defendants' motion for summary judgment on this basis, and the Court will dismiss Plaintiff's <u>Monell</u> claims from the complaint.

### 9.      Pennsylvania Constitution Article I Claim

In the complaint, Plaintiff appears to bring claims under Article I of the Pennsylvania Constitution.[9] (Doc. No. 1 at 17, 19.) In moving for summary judgment on these claims, Defendants raise two separate arguments: (1) that monetary relief is not available for claims brought under Article I of the Pennsylvania Constitution (Doc. No. 47 at 28); and (2) that Plaintiff's "broadly and vaguely" asserted claims fail as a matter of law (<u>id.</u> at 28-29). The Court addresses each of these arguments in turn.

### a.      Monetary Relief Under the Pennsylvania Constitution

The Court observes that Pennsylvania has not recognized a private right of action for monetary damages based upon violations of its Constitution. <u>See, e.g.,</u> <u>Hoffman v. Makhoul</u>, No. 1674 C.D. 2016, 2017 WL 1788348, at *3 (Pa. Commw. Ct. May 5, 2017) (finding that the plaintiff had failed to plead a valid cause of action for a violation of Article I, Section 13 of the Pennsylvania Constitution because the courts of the Commonwealth "have not recognized any private right of action for money damages for violation of the Pennsylvania Constitution" (collecting cases));

---

[9] Plaintiff simply cites to Article I of the Pennsylvania Constitution. (Doc. No. 1 at 17, 19.) He does not, however, specify the contours of this claim.

Mount Airy #1, LLC v. Pennsylvania Dep't of Revenue & Eileen McNulty, 154
A.3d 268, 280 n.11 (Pa. 2016) (recognizing that neither Pennsylvania statutory
authority nor appellate case law has permitted an award of monetary damages for
violations of the Pennsylvania Constitution (citation omitted)); Balletta v. Spadoni,
47 A.3d 183, 192 (Pa. Commw. Ct. 2012) (explaining that, "'[t]o date, neither
Pennsylvania statutory authority, nor appellate case law has authorized the award of
monetary damages for a violation of the Pennsylvania Constitution'" (quoting Jones
v. City of Philadelphia, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006))).

The United States Court of Appeals for the Third Circuit has observed the
same, albeit in non-precedential opinions.[10]   See, e.g., Schutzeus v. Pennsylvania
Bd. of Prob. & Parole, No. 20-2031, 2022 WL 58541, at *2 n.3 (3d Cir. Jan. 6, 2022)
(stating that "Pennsylvania does not recognize a private right of action for damages
for violations of its constitution (citation omitted)); Moss v. Pennsylvania, 838 F.
App'x 702, 708 (3d Cir. 2020) (stating that "Pennsylvania does not recognize a
private right of action for damages in a lawsuit alleging a violation of the
Pennsylvania Constitution" (citation omitted)); Ibn-Sadiika v. Cnty. of Allegheny

---

[10]   The Third Circuit Court of Appeals has recognized that its non-precedential
opinions ("NPOs") may contain persuasive reasoning or factual similarity and, thus,
may be referred to as a paradigm of legal analysis.   See New Jersey, Dep't of
Treasury, Div. of Inv. v. Fuld, 604 F.3d 816, 823 (3d Cir. 2010) (noting that an NPO
is "as persuasive as its reasoning"); Drinker by Drinker v. Colonial Sch. Dist., 78
F.3d 859, 864 n.12 (3d Cir. 1996) (following an NPO based on "factual similarity"
and "look[ing] to the [NPO] as a paradigm of the legal analysis").

Dep't of Ct. Recs., 647 F. App'x 60, 62 (3d Cir. 2016) (finding that the plaintiff's claims for damages based upon alleged violations of the Pennsylvania Constitution failed as a matter of law because Pennsylvania has not authorized an award of monetary damages for such violations of its Constitution); Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011) (stating that "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution").

Federal district courts sitting in Pennsylvania have also observed that the Pennsylvania Constitution does not provide a private right for monetary damages. See, e.g., Walker v. Wetzel, No. 20-cv-1608, 2022 WL 433161, at *9 (M.D. Pa. Feb. 11, 2022) (opining that Pennsylvania has not recognized a private cause of action for damages under the Pennsylvania Constitution and, thus, the plaintiff's claim for damages based upon the defendants' alleged violations of the cruel and unusual punishment clause under Article I, § 13 of the Pennsylvania Constitution was subject to dismissal); M.T. by & Through Eison v. Peterman, No. 17-cv-1619, 2019 WL 461083, at *7 (W.D. Pa. Feb. 6, 2019) (concluding that the plaintiff's state constitutional claims for damages failed to state a claim because "Pennsylvania law does not recognize a private cause of action for damages under the Pennsylvania Constitution . . ." (citations omitted)); Kaucher v. Cnty. of Bucks, No. 03-cv-1212,

2005 WL 283628, at *11 (E.D. Pa. Feb. 7, 2005), aff'd, 455 F.3d 418 (3d Cir. 2006) (explaining that "Pennsylvania has no statute similar to 42 U.S.C. § 1983, which provides the cause of action for damages due to a federal constitutional violation, and the question of whether the Pennsylvania Constitution provides such a cause of action directly is not fully settled").

Thus, in accordance with this vast and sprawling case law, the Court finds that to the extent Plaintiff seeks monetary damages pursuant to the Pennsylvania Constitution, his request is subject to dismissal. Accordingly, the Court will grant Defendants' motion for summary judgment on this basis, and the Court will dismiss Plaintiff's claim for monetary damages based upon violations of the Pennsylvania Constitution.

### b.    Plaintiff's Claim Under the Pennsylvania Constitution

Although Plaintiff is, as discussed directly above, precluded from recovering monetary damages for violations of the Pennsylvania Constitution, he is not precluded from recovering other remedies. See, e.g., Jones, 890 A.2d at 1216 (sating that "[o]ther remedies, such as declaratory or prospective injunctive relief" are available for a violation of Article I of the Pennsylvania Constitution); Hughes v. Rush Twp. Police Dep't, No. 1804 C.D. 2014, 2015 WL 5453321, at *2 (Pa. Commw. Ct. July 6, 2015) (stating that "[a] plaintiff can pursue declaratory or prospective injunctive relief under the Pennsylvania Constitution"). Thus, the Court

must address Defendants' remaining argument—i.e., whether Defendants are entitled to judgment as a matter of law on this claim.

Defendants construe Plaintiff's state constitutional law claim as advancing the same theory as his federal Eighth Amendment claim—that Defendants failed to protect him from Inmate Brown's attack. (Doc. No. 47 at 28-29.) More specifically, they construe Plaintiff's claim as being brought under Article I, § 13 of the Pennsylvania Constitution (id.), which provides as follows: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." See Pa. Const. Art. 1, § 13. Defendants do not dispute that, under Article I, § 13, cruel punishments may not be inflicted upon a prisoner. (Doc. No. 47 at 29.) Nevertheless, they argue that, because § 13 "is coextensive with the Eighth Amendment to the United States Constitution[,]" any claim that Plaintiff has brought under § 13 "should receive the same analysis [that was] addressed under the Eighth Amendment[.]" (Id.) And, it is on this basis that they argue Plaintiff's state constitutional law claim must be dismissed.

As discussed above, however, the Court has already determined that there are genuine disputes of material fact as to whether Defendants Ross, Terra, and Rininger acted with deliberate indifference to Plaintiff's safety, and because of that, Plaintiff's Eighth Amendment claim has survived summary judgment. Thus, the Court finds that Plaintiff's state law constitutional claim also survives summary judgment.

## IV.   CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will grant in part and deny in part Defendants' motion for summary judgment.   An appropriate Order follows.

*s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: July 19, 2022